IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROBERT G. WING, as Receiver for VESCOR CAPITAL CORP, et al., <br><br> Plaintiffs, <br><br><br> vs. <br><br><br> HARRISON H. HORN, an individual and trustee of the HORN IRREVOCABLE TRUST, <br><br> Defendant. | MEMORANDUM DECISION AND ORDER <br><br><br><br><br> Case No. 2:09-cv-00342 |

On June 12, 2009, the Defendant Harrison H. Horn moved this Court to dismiss the First

Amended Complaint filed by the Receiver against him in both his individual capacity and as

trustee of the Horn Irrevocable Trust pursuant to Rule 12(b) of the Federal Rules of Civil

Procedure. The Court held a hearing covering this motion on Wednesday, July 29, 2009, at

which Horn was represented by Mark R. Gaylord and Melanie J. Vartabedian. The Receiver,

Robert G. Wing, was present and represented by M. David Eckersley. Shortly after oral

argument, on July 31, 2009, the parties stipulated to the dismissal with prejudice of Horn in his

individual capacity, which this Court subsequently ordered on August 5, 2009 (dkt. 23 & 25).

After review and consideration of the arguments presented by counsel, the Court enters the following Memorandum Decision and Order.

## I. Factual Background

This action is one of many arising out of the collapse of an alleged Ponzi scheme orchestrated and run by Val Edmund Southwick through a complex web of over 150 corporations and limited liability companies. On May, 5, 2008, the Court appointed Robert G. Wing as Receiver for VesCor Capital Corp., VesCor Capital, Inc., VesCorp Capital, LLC, VesCorp Capital IV-A, LLC, VesCorp Capital IV-M, LLC, and all affiliated limited partnerships, corporations or other business entities (collectively, "VesCor").

The Receiver filed his First Amended Complaint on April 29, 2009,  alleging that Defendant Horn received payments from VesCor exceeding $26,000,000 and assumed debt in the amount of $8,000,000 in exchange for real property in the Deer Valley ski area of Park City, Utah. Complaint, ¶ 1, dkt. 3. The Receiver's Complaint seeks the return of these fraudulently transferred funds under the Utah Uniform Fraudulent Transfer Act ("UUFTA"). Utah Code Ann. § 25-6-5 (2006).

The Receiver's Complaint sets out the factual predicate of the case as follows:

> 6. VesCor was operated by its principal Val Edmund Southwick ("Southwick") as a Ponzi scheme at all times relevant to this action.
> 7. In or about 1990, Southwick organized and operated companies referred to collectively as "VesCor." VesCor raised capital primarily through the sale of securities to investors. VesCor told investors their money would be used to fund the development of commercial and industrial real estate. In fact, VesCor used most of the money it obtained from new investors to pay the debts owed to older investors, to pay commissions on the sale of investments to sales agents, to fund company operations, and to underwrite Southwick's lifestyle.
> 8. In 1992, VesCor was sanctioned by the Utah Department of Commerce,

Division of Securities ("Division") in a Stipulation and Consent Order wherein the Division alleged VesCor had sold unregistered securities to investors in the State of Utah.

9. In September of 2002, VesCor was again sanctioned by the Division in a Stipulation and Consent Order, which said VesCor sold unregistered securities to investors in the State of Utah.

10. In October of 2004, VesCor agreed with the Division to discontinue offering securities for sale to Utah residents, and to cease making offers for the sale of securities from within the State of Utah to investors who resided out the State. VesCor further agreed to pay its current investors their principal and accrued interest at the maturity date of their investments or at an earlier call date.

11. By 2006, VesCor had grown to a complex web of over 150 corporations and limited liability companies, registered in Utah and Nevada, and owned interests in commercial and industrial real estate in Nevada, Utah, Montana and California. On or about May, 31, 2006 the VesCor Ponzi scheme collapsed when Southwick stopped paying monthly interest payments and principal redemptions to most investors.

12. On March 31, 2008, Southwick pleaded guilty to nine counts of securities fraud, each a felony in the second degree, in the Third District Court of Utah, and was later sentenced by Utah District Court Judge Robin Reese to serve nine consecutive 1-15 year prison terms, the maximum allowed by State law.

13. On February 6, 2008, the United States Securities and Exchange Commission ("SEC") filed suit against Southwick and five VesCor entities. The SEC alleged violations of the anti-fraud provisions of the securities laws.

14. On May 5, 2008, this Court appointed Robert G. Wing as Receiver for the VesCor companies.

*Id.* ¶ 6-14.

The Complaint also describes Horn's alleged involvement with VesCor. It alleges that Horn entered into a real estate transaction involving real estate in Park City, Utah in which Horn was paid a $5,000,000 down payment, had $8,000,000 of bank debt assumed by VesCor, was given a promissory note in the approximate amount of $10,625,000, and retained various development rights and other benefits. *Id.* ¶ 15-18. The Complaint also alleges that VesCor paid Horn approximately $11,707,000 between June 28, 2002 and December 14, 2004. *Id.* ¶ 19.

Finally, it alleges that Horn also was paid approximately $9,751,000 in settlement of Horn's claims under the agreement. *Id.* ¶ 20.

## II. Discussion

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Recently, in *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that to meet this threshold requirement, a plaintiff's pleading must "nudge[] their claims across the line from conceivable to plausible." 550 U.S. 544, 570 (2007). Even more recently, in *Ashcroft v. Iqbal*,  the United States Supreme Court expressly made the plausibility standard set out in *Twombly* applicable to "all cases." 129 S.Ct. 1937, 1953 (2009). In so doing, the Court reaffirmed that determining whether a complaint plausibly states a claim for relief remains "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (adding that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." (quotations and alterations omitted)).

For the purposes of the present motion to dismiss, the Court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting *Sutton v. Utah State Scho. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). "In doing so, all facts alleged in the complaint

4

are taken as true and all reasonable inferences are indulged in favor of the plaintiffs." *Id.*

(quoting *GF Gaming Corp. v. City of Black Hawk, Colo.*, 405 F.3d 876, 881 (10th Cir. 2005)).

This presumption applies to well-pleaded facts in the complaint, but not conclusory allegations.

*Id.* (quoting *Mitchell v. King*, 537 F.2d 385, 386 (10th Cir. 1976)).

The Receiver's complaint seeks the return of the funds transferred from VesCor to the

Defendant pursuant to the Utah Uniform Fraudulent Transfer Act ("UUFTA"). Utah Code Ann.

§ 25-6-5 (2006). The UUFTA states that:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor,
> whether the creditor's claim arose before or after the transfer was made or the obligation
> was incurred, if the debtor made the transfer or incurred the obligation:
> > (a) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> > (b) without receiving a reasonably equivalent value in exchange for the transfer or
> > obligation; and the debtor:
> > > (i) was engaged or was about to engage in a business or a transaction for
> > > which the remaining assets of the debtor were unreasonably small in
> > > relation to the business or transaction; or
> > > (ii) intended to incur, or believed or reasonably should have believed that
> > > he would incur, debts beyond his ability to pay as they became due .

*Id.* In addition, Utah's statutory scheme allows "actual intent" to be inferred from "certain

indicia of fraud" enumerated by in the statute, including where the "debtor was insolvent or

became insolvent shortly after the transfer was made or the obligation was incurred." *Id.* § 25-6-

5(2)(i).

As a result, in a fraudulent transfer claim, a plaintiff need only plead and prove the

transferor's, in this case VesCor's, intent to defraud. The plaintiff is not required to plead or

prove that the transferee participated in the fraudulent activity. *See Rieser v. Milford (*In re

*Chari)*, 276 B.R. 206, 213 (Bankr. S.D. Ohio 2002). Furthermore, good faith is an affirmative

defense to a fraudulent transfer claim, and a complaint need not allege particular facts to defeat that defense. *Barclay v. Swiss Finance Corporation, Ltd.*, 347 B.R. 708, 714-15 (Bankr. S.D.Ca. 2006).

In cases involving allegations of fraud or mistake, Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake shall be stated with particularity." Complaints alleging fraud must set forth the "time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000). The applicability of Rule 9(b) to UFTA claims is an issue of first impression in the Tenth Circuit. Though there is some disagreement between the circuits, *see, e.g.*, *Kranz v. Koenig*, 240 F.R.D. 453, 455 (D.Minn. 2007) (describing the differing approaches taken by several courts), courts generally apply Rule 9(b)'s requirements to intentional fraudulent transfer claims which turn on the transferor's "an actual intent to hinder, delay, or defraud," but not to constructive fraudulent transfer claims which turn solely on the sufficiency of the consideration and the transferor's financial condition. *See, e.g.*, In re *Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005) (applying Rule 9(b) to an intentional fraudulent transfer claim because an "actual intent to hinder, delay, or defraud constitutes fraud [and therefore] must be pled with specificity"); *Van-American Ins. Co. v. Schiappa, et al.*, 191 F.R.D. 537, 541-43 (S.D.Ohio 2000); In re *NM Holdings Co., LLC*, 407 B.R. 232, 258 (Bankr.E.D.Mich. 2009); In re *Motorwerks, Inc.*, 371 B.R. 281, 295 (Bankr.S.D.Ohio 2007); In re *Plassein Int'l. Corp.*, 352 B.R. 36, 40 (Bankr.D.Del. 2006); In re *Commercial Financial*

*Services, Inc.*, 322 B.R. 440, 450 (Bankr.N.D.Okla. 2003); In re *White Metal Rolling &*

*Stamping Corp.*, 222 B.R. 417, 428-29 (Bankr.S.D.N.Y. 1998). The underlying rationale of these

cases is that "there is no reason to require a trustee to plead a defendant's fraud or misconduct

with specificity if such fraud or misconduct is not an element of the trustee's fraudulent transfer

claim." *Motorwerks*, 371 B.R. at 295. Stated more elaborately,

> When "fraud" is alleged solely because a debtor transferred property while it was
> insolvent, the transferee is not accused of an act of fraud or deception; indeed,
> other than receiving the transfer, the conduct and mental state of the transferee is
> irrelevant. It is the debtor, if anyone, who is charged with transferring property in
> "fraud" of its creditors. Fraudulent transfer actions alleging "constructive fraud"
> often seek to recover transfers from innocent third parties. Thus, the policy that a
> defendant should have notice of the precise act or conduct that is being
> questioned as fraudulent so that it may adequately defend itself from such
> loathsome accusations and preserve its reputation is not implicated when there is
> no allegation that the transferee committed an act of fraud. With respect to the
> issue of insolvency of the debtor, a general allegation of insolvency provides a
> defendant fair notice of the plaintiff's contention and renders sufficient
> information from which a defendant may create discovery requests in order to
> defend, as in any civil action. A transferee need not "defend its honor" against the
> accusation that the debtor was or became insolvent when the transferee's
> knowledge or intent as to the debtor's insolvency is not an element of the
> fraudulent transfer claim.

*Commercial Financial*, 322 B.R. at 450.

On its face, the Receiver's complaint against Horn alleges both intentional and

constructive fraudulent transfer claims; i.e., that the VesCor entities transferred funds to Horn

with "an actual intent to hinder, delay, or defraud," Complaint, ¶ 24, and that "the transfers were

made at a time when VesCor was insolvent, VesCor did not receive reasonably equivalent value

for the transfers, and Defendant did not take the transfers in good faith, *id.* ¶ 25. As noted above,

intentional fraudulent transfer claims must generally be pleaded with particularity. In the present

case, however, the difference between intentional and constructive fraudulent transfer claims is far less significant because an inference of fraudulent intent applies to transfers made pursuant to a Ponzi scheme. Accordingly, the Receiver's claims are all best characterized as constructive fraudulent transfer claims to which Rule 9 does not apply under the reasoning of the cases cited above.

It bears noting that it is well-settled that an inference of fraudulent intent applies in Ponzi scheme cases. *See, e.g.*, *Wing v. Harrison*, 2004 WL 966298, at *2 (D. Utah Apr. 29, 2004); In re *Independant Clearing House*, 77 B.R. 843, 866 (D. Utah 1987). This inference is also supported by Utah's statutory scheme, which allows "actual intent" to be inferred if the debtor is insolvent. *See* Utah Code Ann. § 25-6-5(2)(I). This statutory "indicia of fraud" applies in Ponzi scheme cases because it is well-established that Ponzi schemes are insolvent as a matter of law. *See Cunningham v. Brown*, 265 U.S. 1, 7-8 (1924); *Warfield v. Byron*, 436 F.3d 551, 558 (5th Cir. 2006). Furthermore, the Court does not believe that the United States Supreme Court's decisions in *Twombly* and *Iqbal* undermine this inference of fraudulent intent in any way. Rather, those decisions instruct the Court to "draw on its judicial experience and common sense" in a "context-specific" manner. *Iqbal*, 129 S.Ct. at 1950. In the present case, the Court draws on its common sense and experience in relying on the thoroughly plausible inference that the transfers made by the operator of a Ponzi scheme during the course of perpetuating that fraudulent activity are made with fraudulent intent.

Horn additionally argues that this inference of fraudulent intent should not apply to transfers made "outside of the Ponzi scheme," Horn Reply, at 7, dkt. 17 (July 15, 2009), and

directs the Court to *Brant v. American Nat'l Bank & Trust Co.*, 188 B.R. 239 (Bankr. N.D. Ill. 1995). That case differentiated between "payments that are made as part of and in furtherance of a Ponzi scheme" and "ordinary business transactions outside of the Ponzi scheme," and applied an inference of fraudulent intent to the former category of transfers only. *Id.* at 244. Categorizing transactions in this manner, however, is inconsistent with fraudulent transfer law's focus on the transferor and unhelpful at the pleading stage, especially under the facts of the present case. The Receiver has filed approximately forty cases against a variety of defendants he alleges benefitted significantly from Southwick's alleged Ponzi scheme. Without exception, each of the defendants that have come before the Court have argued vehemently that they merely entered into ordinary business transactions with Southwick's entities. As noted above, whether a defendant took payments from VesCor in good faith and for reasonably equivalent value is an affirmative defense, the merits of which should properly be left to a later point in the proceeding.

In sum, the Court can find no principled reason for applying Rule 9's pleading requirements to any of the Receiver's fraudulent transfer claims. There is no allegation that the Defendant committed any act of fraud; indeed, the defendant's conduct is simply not an element of the Receiver's claim. Furthermore, the Court finds that the distinction between intentional fraudulent transfer and constructive fraudulent transfer claims drawn by other courts addressing the applicability of Rule 9 to fraudulent transfer cases is not helpful in Ponzi scheme cases in which "actual intent" can be inferred by virtue of the transferor's insolvency as a matter of law. Finally, the Court finds that this inference of fraudulent intent applies to all transfers from a Ponzi scheme, regardless of the defendant's characterization of them as ordinary business

transactions.

In light of the above, the Court holds that the Receiver has sufficiently pleaded his fraudulent transfer claims to meet the plausibility standard set out in *Twombly* and *Iqbal*. First, the Complaint sufficiently alleges the existence of a Ponzi scheme. The Complaint provides a brief history Southwick's operations from 1990 to 2006, the date the scheme allegedly collapsed. It alleges the manner in which Southwick borrowed and dissipated investor funds and lists VesCor's checkered history with the Utah Department of Commerce, Division of Securities as well Southwick's eventual 2008 conviction of nine counts of securities fraud for transactions occurring during the period he allegedly was operating VesCor as a Ponzi scheme.

Second, because the Complaint sufficiently pleaded the existence of Southwick's  Ponzi scheme, the inference of fraudulent intent applies to transfers made by Southwick during the course of carrying out his scheme, even transfers made pursuant the real estate and settlement agreements at issue in the present case. The well-pleaded facts contained in the Receiver's complaint certainly allow the Court "to infer more than the mere possibility of misconduct." *Iqbal*, 129 S.Ct. At 1950. The Complaint describes the Defendant's dealings with VesCor, and details the payments made from VesCor to him pursuant to various real estate development and settlement agreements. The Complaint plausibly demonstrates that the Receiver is entitled to the return of these funds. Horn is free to establish, at a later point in the proceedings, that the development agreement and settlement agreement he entered into were legitimate in that he that he took the  payments made pursuant to those agreements in good faith and for a reasonably equivalent value. At this stage, however, the Receiver has done enough.

### III. Conclusion

For the foregoing reasons, Horn's Motion to Dismiss the Receiver's Complaint against

him pursuant to Rule 12(b)(6) is DENIED.

**IT IS SO ORDERED.**


DATED this 26th day of August, 2009.

_____
Judge Dee Benson
United States District Court